Matthew M. Mahoney, Esq. (SBN 211184)
Dwayne H. Stein, Esq.  (SBN 261841)
Erin L. Crane, Esq. (SBN 323278)
WITHAM MAHONEY & ABBOTT, LLP
401 B Street, Suite 2220
San Diego, California  92101
Telephone (619) 407-0505
E-Mail:     mahoney@wmalawfirm.com
            stein@wmalawfirm.com
            crane@wmalawfirm.com

Attorneys for Plaintiff PHAMATECH INCORPORATED,
a California corporation

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PHAMATECH INCORPORATED**, a California corporation<br><br>Plaintiff,<br><br>v.<br><br>**WALGREEN, CO.**, an Illinois Corporation, and DOES 1-10, inclusive<br><br>Defendants. | Case No. **'21CV1234 AJB  RBB**<br><br>**PLAINTIFF PHAMATECH, INCORPORATED'S COMPLAINT FOR:**<br><br>(1) BREACH OF CONTRACT;<br>(2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;<br>(3) NEGLIGENT MISREPRESENTATION;<br>(4) CONVERSION;<br>(5) COMMON COUNT— GOODS SOLD AND DELIVERED;<br>(6) COMMON COUNT— ACCOUNT STAND,<br>(7) UNFAIR BUSINESS PRACTICES (CODE CIV. PROC., § 17200) |

**PLAINTIFF PHAMATECH, INCORPORATED'S COMPLAINT**

Plaintiff PHAMATECH, INC. ("Phamatech") hereby alleges against Defendant WALGREEN, CO. ("Walgreens"), and DOES 1 through 1- 10 as follows:

## PARTIES

1. Plaintiff Phamatech, Inc. is a California corporation headquartered in San Diego, California.

2. Defendant Walgreen Co. is an Illinois corporation, headquartered in the state of Illinois, but registered as a California Corporation, Corp No. C0365922. Walgreens conducts extensive business in the State of California, including operating at least 586 stores in California and selling products to California residents via ecommerce.

3. Plaintiff is unaware of the true names and capacities of Defendants "DOES 1 through 10," and therefore sue them by those fictitious names.  Plaintiff reserves the right to amend this Complaint to identify those defendants by their name and capacity after that information is ascertained.

4. DOES 1 through 10 are the servants and/or agents of Defendant and every act or omission alleged in this Complaint was committed within the course and scope of that service and/or agency.  Accordingly, DOES 1 through 10 may be held liable for the acts and omissions alleged in this Complaint.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because it is a dispute between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. The U.S. District Court for the Southern District of California has personal jurisdiction over the Defendants because Defendants conduct significant business in the Southern District of California and maintains offices and/or stores in the Southern District of California, and many of the acts complained of and giving rise to the claims alleged herein occurred in California.

7.  Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

A.  **Walgreens and Phamatech Enter into Agreement to Purchase and Sell Phamatech Goods.**

8.  Phamatech is a manufacturer of home drug-testing kits among other products, and is a testing laboratory, located in San Diego. Historically, one of Phamatech's main products are kits that allow consumers to test for certain drugs at home. Phamatech manufactures these kits and sells them to merchants who then sell these products to their customers. The relationship between Walgreens and Phamatech goes back nearly twenty years when Phamatech began acting as a "vendor" selling its products to Walgreens, for Walgreens to sell to its customers.

9.  As to the current dispute, in or about March 2017, the Walgreens and Phamatech executed that certain "Consignment Business Agreement for Supply of Merchandise to DC for Scan Based Trading" (the "Agreement"). Per the terms of the Agreement, Walgreens sold certain Phamatech products in its stores. The Agreement set forth that Phamatech would be compensated on a "consignment" basis, meaning Walgreens would pay Phamatech once products were sold to consumers.

10. In practice, the relationship between the Parties usually took the following format: Walgreens would provide Phamatech with "Purchase Orders," stating the type of product and number of units Phamatech was to provide. Phamatech would then fulfill the Purchase Orders by sending the requested items to Walgreens to various distribution centers designated by Walgreens.

11. Pursuant to the Agreement, Walgreens agreed to only sell Phamatech home drug-testing kits in its stores. Additionally, certain products were to be manufactured by Phamatech and sold exclusively to Walgreens. For example, Walgreens sought an "At Home Nicotine Test" that would be manufactured exclusively for Walgreens stores. Walgreens and Phamatech agreed that this exclusivity would last for all of 2019 and 2020.III.

B. **The Agreement Specifies Walgreens is to Track Phamatech Sales Utilizing "Scan" Accounting.**

12. Per the Agreement, Walgreens computed Phamatech's contractual compensation on a "scan basis." This meant that Walgreens would order and be in possession of Phamatech goods, and then would place the Phamatech goods on display for sale in its stores. When a customer purchased a Phamatech good, the item would be "scanned" when sold. Walgreens would then be obligated to pay Phamatech at the contract price, less the contract amount for marketing and promotional fees, for each item sold. Walgreens was required to make payment for each sale to Phamatech sixty (60) days after "scan" of the sale, less two percent.

13. For tracking purposes, Walgreens was required to provide Phamatech with documentation of what products were sold, the sales amount, and any applicable marketing and promotional fees. This documentation would provide a backup of how much Walgreens owed to Phamatech and was to be the basis for the compensation paid by Walgreens to Phamatech under the Agreement.

14. However, starting in or about July 2017, Walgreens stopped providing this documentation to Phamatech. Instead, Walgreens claimed the underlying sales information was available through a vendor "web portal." The website provided by Walgreens was difficult if not impossible to access/navigate, and it failed to provide

understandable information whereby Phamatech could meaningfully trace the sale of its goods.

C. **Walgreens Demands Increased Production and Supply of Phamatech Goods.**

15. In or about March 2020, Walgreens notified Phamatech that Walgreens needed to increase its orders because it intended to display "double facings" of Phamatech products—meaning Walgreens would be displaying twice as much Phamatech products than it had been previously. Walgreens even sought assurances from Phamatech, in writing, that Phamatech would be able to manufacture and timely ship to meet Walgreens' increased demand for additional Phamatech goods. Phamatech adjusted its production of raw materials to meet this increased demand.

16. The result of Walgreens' requests was Phamatech being required to timely ship any increased orders from Walgreens. Phamatech complied with Walgreens' request to ramp up production of products for Walgreens and had the items ready to ship. Phamatech was required to increase production because the Agreement contained penalties for Phamatech not being able to timely fulfill orders.

17. Further, Walgreens also provided Phamatech with documentation showing increased ordering of Phamatech's goods would continue through 2020. Thus, Phamatech reasonably relied on Walgreens' representations to ramp up production of these items.

D. **Then, Just Weeks Later, Walgreens Inexplicably Cancels the Agreement.**

18. On or about April 6, 2020, approximately two weeks later, while Walgreens was demanding Phamatech ramp up production, Walgreens also sent notification it was cancelling the entire scan-based Agreement without any warning

or explanation, effective August 21, 2020. The termination notice stated that the "exit date" would occur on or about October 9, 2020.

19. Nonetheless, despite the cancellation, Phamatech continued to receive regular purchase orders from Walgreens until July 2020.

E. **Per the Agreement, Walgreens Failed to Pay Phamatech for Items It Had Already Sold.**

20. Even though Walgreens failed to substantiate its sales documentation, Phamatech was able to calculate the amounts still owed pursuant to Walgreen's own documentation by matching payments to shipments and recorded sales. Accordingly, Phamatech was able to establish that Walgreens has failed to pay it for a significant amount of Phamatech goods sold by Walgreens.

21. Between July 2017 and December 2020, Walgreens sold approximately $22,531,129 worth of Phamatech products pursuant to the Agreement. Walgreens deducted $6,792,038 in contractual deductions and promotional fees, leaving a total of $15,739,091 owed on Walgreens' sale of Phamatech goods.

22. During this period, Walgreens paid Phamatech $13,069,310, leaving a balance of approximately $2,699,781 owed and unpaid to Phamatech pursuant to the terms of the Agreement.

23. Beginning on or about October 30, 2020, Phamatech provided notice to Walgreens of the remaining unpaid $2,699,781 owed to Phamatech pursuant to the Agreement. However, Walgreens never acknowledged this money owed to Phamatech. Phamatech continued to pursue these delinquent payments through regular correspondence, without any response from Walgreens.

/ / /

/ / /

/ / /

**F.    Walgreens Returned Unusable Goods in Bad Faith.**

24.    Per the Agreement, once the contract was terminated, the parties were required to work together to sell the remaining inventory of Phamatech goods in Walgreens' possession.  If after these efforts unsold Phamatech goods remained in Walgreens' possession, it retained the right to return unsold goods to Phamatech.

25.    Nonetheless, instead of following the process to resell the remaining inventory, Walgreens attempted to return all "unsold" units to Phamatech.  Certain units that Walgreens returned to Phamatech were items that had been ordered at least four years earlier and was not part of the scan-based agreement, and these items were well past the product expiration date.  Further, most of the goods returned by Walgreens were so damaged and/or destroyed as to render them unusable and unsaleable.

26.    Thus, the goods returned by Walgreens were worthless, as they could not to be resold or repurposed by Phamatech due to their damaged/destroyed condition and/or age resulting in damages not yet ascertainable.

27.    Further, Phamatech's sales data has revealed that Walgreens did not pay for all the Phamatech goods it sold.  Instead, an estimated 600,000 units of Phamatech goods were shipped, delivered, and sold but not paid for by Walgreens.

**G.    The Parties Engaged in Required Informal Dispute Resolution.**

28.    Per "Dispute Resolution" provision of the Agreement, either Party was required to notify the other of any potential claims prior to commencing a lawsuit. The Parties further agreed to use good faith efforts to resolve the matter and negotiate for a period of thirty days.  If the claim is still not resolved, the Parties agreed to then "escalate" the discussions to "higher level representatives" for at least another thirty days.  If the Parties have still not reached a resolution, either Party may pursue legal recourse at its option.

29. In or about October 2020, Phamatech began corresponding with Walgreens regarding its claim that Walgreens had not paid for all the goods sold pursuant to the Agreement. To date, the Parties have been unable to resolve their dispute following the previously mentioned Dispute Resolution procedure.

## FIRST CAUSE OF ACTION

**(Breach of Contract—Against Defendant Walgreens and Does 1 through 10)**

30. Plaintiff repeats, repleads and realleges the allegations contained in paragraphs 1 through 29, inclusive, and incorporates the same herein by this reference as though set forth in full.

31. Walgreens and Phamatech entered into a written agreement for Walgreens to sell certain Phamatech products in its stores. The Agreement called for Walgreens to pay Phamatech a set price for each item once Walgreens sold said item, less any applicable promotional and marketing charges set forth in the Agreement.

32. Per the Agreement, Walgreens provided Phamatech with Purchase Orders for the amount of each product it was purchasing from Phamatech. Each time Walgreens initiated a Purchase Order for Phamatech products, an offer was made. The terms of the offer were expressly contained in that Purchase Order. By fulfilling the Purchase Order and sending Walgreens the ordered products, Phamatech accepted the offer contained in the Purchase Order.

33. For each Purchase Order, Phamatech sent Walgreens the conforming goods stated in the Purchase Order. Per the Agreement, Walgreens agreed to sell the Phamatech products in its stores and pay Phamatech the agreed-upon price for each product sold.

34. Walgreens did not object to the terms contained in the Agreement or corresponding Purchase Orders, nor did it ever refuse a shipment of goods from Phamatech.

35. Phamatech performed all, or significantly all the acts required by Agreement or was excused from performing such acts, in that Phamatech fulfilled the Purchase Orders by delivering the ordered goods to Walgreens at the time and place agreed upon by the parties.

36. All conditions required for Walgreens' performance either occurred or were excused.

37. Walgreens breached the agreement by selling Phamatech products and then refusing to pay Phamatech for all the products sold.

38. As a result, Phamatech was harmed in that Walgreens refused to pay for all Phamatech goods it obtained and sold at its stores.

39. Phamatech has suffered damages as a direct and proximate result of Walgreens' breach of contract in an amount according to proof at trial, estimated to be approximately $2,699,781.

## SECOND CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing Against Defendant Walgreens and Does 1 through 10)**

40. Plaintiff repeats, repleads and realleges the allegations contained in paragraphs 1 through 39, inclusive, and incorporates the same herein by this reference as though set forth in full.

41. Phamatech and Walgreens entered into contracts whereby Walgreens purchased Phamatech products on consignment and agreed to pay Phamatech a set price for each item sold in its stores. In fulfilling its duty to act in good faith as a

merchant, Walgreens must act honestly and observe reasonable commercial standards of fair dealing in the trade.  (Cal. Com. Code, § 2103(1)(b).)

42. Walgreens was required to take certain steps regarding the "consignment" goods it purchased from Phamatech, mainly that it would sell these goods in its stores and then pay Phamatech the contract price for each item sold.

43. Further, Walgreens was required to act reasonably in its communications regarding the products for which Walgreens required would be manufactured and sold in Walgreens' stores.

44. Walgreens knew or should have known that Phamatech would manufacture these goods based on the representations, expectations, and demands made by Walgreens.

45. In or about March 2020, Walgreens demanded Phamatech increase the number of products it manufactured and provided to Walgreens.  To that end, Walgreens stated it would begin displaying twice as much Phamatech product and would be ordering more Phamatech goods to meet this additional display.  Walgreens even repeatedly sought assurances from Phamatech that it would be able to manufacture and timely ship good to meet this increased demand.

46. Phamatech reasonably relied on Walgreens' representations and demand that it needed to ramp up production of these items so it could meet the stated increased demand through 2020.  These and other representations were material to Plaintiffs' decision to increase manufacturing products for sale to Walgreens.  Absent these and other material representations, Phamatech would not have increased the production of goods for the sole purpose of selling them to Walgreens.

47. Phamatech performed all, or significantly all of the acts required by the Purchase Agreement or were excused from performing such acts.

48. All conditions required for Walgreens' performance either occurred or were excused.

49. However, as alleged above, Walgreens took affirmative steps to keep Phamatech from realizing the benefit of the Agreement.

50. Walgreens breached the Agreement's implied covenant of good faith and fair dealing by unfairly interfering with Phamatech's right to receive the benefits of the Agreement by, among other things, inducing Phamatech to increase its production of items it knew Phamatech was manufacturing to meet Walgreens stated demand for increased ordering, when in fact, Walgreens knew it was about to cancel its contract with Phamatech.

51. Then, after Walgreens cancelled the Agreement with Phamatech, Walgreens failed to pay Phamatech for the goods it sold, attempted to return goods that were damaged, destroyed, or past its expiration date, and failed to account for nearly 600,000 units of goods Phamatech provided to Walgreens.

52. Accordingly, Phamatech demands judgment against Walgreens and requests as relief damages resulting from Walgreens' breach of the covenant of good faith and fair dealing and for such other and further relief as the Court may deem proper under the circumstances.

## THIRD CAUSE OF ACTION

**(Negligent Misrepresentation Against Defendant Walgreens and Does 1 through 10)**

53. Plaintiff repeats, repleads and realleges the allegations contained in paragraphs 1 through 52, inclusive, and incorporates the same herein by this reference as though set forth in full.

54. In or about March 2020, Walgreens approached Phamatech and demanded Phamatech increase the number of products it provided to Walgreens—

Walgreens stated it would begin displaying twice as much Phamatech product. Walgreens even repeatedly sought assurances from Phamatech that it would be able to manufacture and timely ship this increased demand. Further, Walgreens provided Phamatech with documentation which showed this increased demand and ordering would continue at least through the end of 2020.

55. Walgreens knew these representations and demands, coupled with providing documentation showing this increased demand would continue for a year, would cause Phamatech to increase its production of products for the purpose of meeting Walgreens' increased Purchase Orders.

56. Phamatech reasonably relied on Walgreens' representations and demands that it needed to ramp up production of these items so it could meet the stated increased demand through 2020. These and other representations were material to Plaintiffs' decision to increase production of raw materials needed to meet this increased demand. As a result, Phamatech complied with Walgreens' request for increased production of products for Walgreens and had these items ready to ship. Absent these and other material representations, Phamatech would not have increased the production of raw materials for the sole purpose of producing goods to meet Walgreens' stated increased demand for Phamatech goods.

57. However, Walgreens made these representations without a reasonable basis to believe they were true. In fact, at the same time Walgreens was making these representations to Phamatech, Walgreens was actively negotiating with a competing vendor. Two weeks after Walgreens induced Phamatech to double its production of raw material needed for production of Walgreens' goods, Walgreens terminated its contract with Phamatech, and stated it would not be purchasing any of the recently demanded items, and began a new contract with this competing vendor.

58. At the time Walgreens made these misrepresentations to Phamatech, Walgreens was aware of their falsity.

59. Had Phamatech known the truth behind these misrepresentations, it would not have increased its production of raw materials exclusively for the purpose of meeting Walgreens' increased demand.

60. As a direct and proximate result of Walgreens' misrepresentation, Phamatech was damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

**(Conversion Against Defendant Walgreens and Does 1 through 10)**

61. Plaintiff repeats, repleads and realleges the allegations contained in paragraphs 1 through 60, inclusive, and incorporates the same herein by this reference as though set forth in full.

62. Phamatech manufactured and owned the goods it produced, at the request of Walgreens, for the purpose of fulfilling Walgreens' orders made pursuant to the Agreement.

63. Per the terms of the Agreement, Walgreens would provide Phamatech with Purchase Orders, stating the type of product and number of units Phamatech was to provide. Phamatech would then fulfill the PO by sending the requested items to Walgreens.

64. Over many years, Walgreens ordered Phamatech goods, and Phamatech fulfilled each of these orders.

65. Walgreens substantially interfered with Phamatech's property by knowingly or intentionally taking possession of an estimated 600,000 units of Phamatech goods, and then either refusing to return or paying for the goods after Phamatech demanded its return.

66. Phamatech did not consent to Walgreen's keeping the goods without payment.

67. As a direct and proximate result of Walgreens' refusing to return and/or destroying the goods, Phamatech was damaged in an amount to be determined at trial.

68. Walgreen's conduct was a substantial factor causing Phamatech's harm.

## FIFTH CAUSE OF ACTION

### (Common Count—Goods Sold and Delivered—Against Defendant Walgreens and Does 1 through 10)

69. Plaintiff repeats, repleads and realleges the allegations contained in paragraphs 1 through 68, inclusive, and incorporates the same herein by this reference as though set forth in full.

70. During the period between 2017 and 2020, Walgreens became indebted to Phamatech in the amount of $15,739,091 for goods sold and delivered to Walgreens at the price set forth in the Agreement.

71. Walgreens has paid to Phamatech only the amount of $13,069,310, though demand for payment in full has been made, and there is now due, owing, and unpaid from Walgreens to Phamatech the amount of $2,699,781, with interest on that amount at the rate of 10% from November 1, 2020.

## SIXTH CAUSE OF ACTION

### (Common Count—Account Stated—Against Walgreens and Does 1 through 10)

72. Plaintiff repeats, repleads and realleges the allegations contained in paragraphs 1 through 71, inclusive, and incorporates the same herein by this reference as though set forth in full.

73. Following the Termination of the Agreement, Walgreens owed Phamatech money from the goods Phamatech delivered and Walgreens sold pursuant to the Agreement.

74. By the terms of the Agreement, Phamatech and Walgreens agreed that Walgreens would pay a certain price for each good delivered by Phamatech and sold by Walgreens.

75. During the period between 2017 and 2020, Walgreens became indebted to Phamatech in the amount of $15,739,091 for goods sold and delivered to Walgreens at the price set forth in the Agreement.

76. Walgreens has paid to Phamatech only the amount of $13,069,310, though demand for payment in full has been made, and there is now due, owing, and unpaid from Walgreens to Phamatech the amount of $2,699,781, with interest on that amount at the rate of 10% from November 1, 2020.

77. Walgreens promised to pay the contract price for each Phamatech product sold pursuant to the Agreement.

78. Walgreens has not paid Phamatech all the amount owed under the Agreement

79. Walgreens owes Phamatech the amount of $2,699,781, with interest on that amount at the rate of 10% from November 1, 2020.

## SEVENTH CAUSE OF ACTION

**(Unfair Competition, California Business and Profession Code §17200－Against Defendant Walgreens and Does 1 through 10)**

80. Plaintiff repeats, repleads and realleges the allegations contained in paragraphs 1 through 79, inclusive, and incorporates the same herein by this reference as though set forth in full.

81. Walgreens was engaged in the business practice of representing that it was purchasing Phamatech goods on "consignment," to be paid for once the goods were sold in its stores, when instead, Walgreens was refusing to pay for all the goods it sold, and failing to provide the required documentation so Phamatech could track the sale of its goods.

82. California Business & Professions Code section 17200 (the Unfair Competition Law or "UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice."

83. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

84. Walgreens has violated Section 17200's prohibition against "unfair" business acts or practices by, inter alia, inducing Phamatech to provide it with goods pursuant to a "consignment" agreement, but then refusing to fully pay Phamatech once the goods are sold in its stores.

85. As a result of Walgreens' unfair business practices, Phamatech has been injured in fact. 66. Walgreens' conduct caused and continues to cause substantial injury to Phamatech.

86. Additionally, pursuant to California Business & Professions Code §17203, Phamatech seeks an order requiring Walgreens to immediately cease such acts of unfair business practices and requiring Walgreens to fully pay its vendors for all the goods it has sold on consignment.

/ / /

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

     1.    General and special damages, in excess of $2,699,781, in an amount to be proven at trial;

     2.    Equitable relief in the form of an injunction prohibiting the unfair business practices alleged herein;

     3.    Award Plaintiffs reasonable attorneys' fees and costs of suit pursuant to the Agreement;

     4.    Award Plaintiffs pre- and post-judgment interest as requested herein; and

     5.    Provide such other relief as the Court deems equitable and just and proper.

DATED this 8th of July 2021.

**WITHAM MAHONEY & ABBOTT, LLP**

By: */s/ Dwayne H. Stein*
Matthew M. Mahoney, Esq. (SBN 211184)
Dwayne H. Stein, Esq.  (SBN 261841)
Erin L. Crane, Esq. (SBN 323278)
401 B Street, Suite 2220
San Diego, California 92101
Email: mahoney@wmalawfirm.com
         stein@wmalawfirm.com
         crane@wmalawfirm.com
Tele: (619) 407-0505 / Fax: (619) 872-0711

Counsel for Plaintiff PHAMATECH, INCORPORATED, a California corporation

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff PHAMATECH, INC. hereby demands a jury trial as to all issues.

DATED this 8th of July 2021.

**WITHAM MAHONEY & ABBOTT, LLP**

By: */s/ Dwayne H. Stein*
Matthew M. Mahoney, Esq. (SBN 211184)
Dwayne H. Stein, Esq.  (SBN 261841)
Erin L. Crane, Esq. (SBN 323278)
401 B Street, Suite 2220
San Diego, California 92101
Email: mahoney@wmalawfirm.com
stein@wmalawfirm.com
crane@wmalawfirm.com
Tele: (619) 407-0505 / Fax: (619) 872-0711

Counsel for Plaintiff PHAMATECH, INCORPORATED, a California corporation